IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | **FOR FORFEITURE** |
| $48,100.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $48,100.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about October 19, 2009, the Defendant property was seized in Lancaster County, Nebraska by troopers of the Nebraska State Patrol; the property is currently held by the U.S. Marshals Service. Immediately after said seizure, administrative forfeiture proceedings were instituted by the U. S. Drug Enforcement Administration.

5. John Nelson has filed a Claim for ownership, pertaining to said Defendant property, with the U. S. Drug Enforcement Administration.

6. Marijuana is a controlled substance pursuant to Title 21, United States Code, Section 812.

7. On October 19, 2009, John Nelson was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

    a. On October 19, 2009, Nebraska State Patrol Trooper Rob Pelster stopped a 1995 Ravens-Metal Products, Inc. RV for a traffic violation. The driver and sole occupant was identified as John R. Nelson. The vehicle is registered to the driver's parents, John A. Nelson and Pamela S. Nelson.

    b. Trooper Pelster noted the driver exited the rear door of the RV very quickly and closed the door behind him. Mr. Nelson could not produce a registration, but said the vehicle was owned by his parents. Mr. Nelson further said he was coming from Colorado after snowboarding at Breckenridge and another resort. Mr. Nelson said he had his own snowboard which was in the RV. Trooper Pelster asked Mr. Nelson if he had ever been arrested for any weapon or drug offenses. Mr. Nelson said he had not. Communications advised Mr. Nelson had a positive criminal history which included a possession of controlled substance arrest in Wisconsin in 2004.

    c. Trooper Pelster asked Mr. Nelson if there were any firearms, drugs or any large amounts of currency in the vehicle. Mr. Nelson said no. Mr. Nelson exhibited excessive signs of nervousness, *i.e.*, hands continually shaking and carotid artery pulsating, throughout the traffic stop. Trooper Pelster asked Mr.

Nelson for consent to search the RV; he said no. Trooper Pelster then told Mr. Nelson he was being detained for an exterior sniff of the vehicle by a drug K-9. While awaiting the drug K-9, Trooper Pelster told to Mr. Nelson personal use marijuana was only a fine in Nebraska. Mr. Nelson then said he had a personal use amount of marijuana in the RV. Trooper Pelster then told Mr. Nelson he had probable cause to search the vehicle.

d. Trooper Pelster directed Mr. Nelson to a grassy area away from the RV and the Interstate, and directed him to stay there while troopers searched the RV. During the search, troopers found a jar containing seventeen grams of marijuana. They also found Mr. Nelson's backpack, which contained three High Times magazines, a glass marijuana pipe, a metal marijuana grinder with marijuana inside, and one large bundle of U.S. currency, which was made up of several, individually wrapped bundles held together with rubber bands. These bundles comprise the Defendant property, $48,100.00.

e. Upon this discovery, Trooper Pelster left the RV and addressed Mr. Nelson, who was still situated in the grassy area. Trooper Pelster told Mr. Nelson there was an unusually large amount of currency in the RV. Mr. Nelson said he had money with him because he was moving to Colorado. He said the money was what he had earned over several years. Trooper Pelster told Mr. Nelson he was going to seize the money. He asked Mr. Nelson to estimate the amount of money in the backpack. Mr. Nelson said "fifty grand". Trooper Pelster then Mirandized Mr. Nelson. Mr. Nelson agreed to speak to

the trooper about his trip and the currency. Mr. Nelson said he did not have any receipts with him. He said his grandmother had given him bonds. He had cashed them, and that is the source of the currency in his backpack. Mr. Nelson was then taken to the Lincoln Patrol office.

f. At approximately 12:43 p.m., Trooper Pelster again advised Mr. Nelson of his *Miranda* rights. Mr. Nelson executed a rights waiver form. Mr. Nelson agreed to an interview. He said he was not currently on probation or parole. He said he had previously been on probation for criminal mischief and the probation was extended for a drug violation. He said he had left Milwaukee two weeks prior to the traffic stop. He initially went to Denver, then Boulder. He stayed with a friend named Matt. He did not want to give Matt's last name because he did not want to get anyone else involved. He said his dad is an attorney who used to be a federal prosecutor. He said he got the money in his backpack from bonds. He did not know how many bonds or what kind of bonds they were. He had intended to live in Colorado, but it did not work out. He said his dad cashed the bonds, but they were in his name. He did not know what day his dad had cashed the bonds. Trooper Pelster asked Mr. Nelson if his dad handed him the cash from the bonds; he said he did not. Trooper Pelster then asked Mr. Nelson who gave him the cash: Mr. Nelson said, "I don't know". Mr. Nelson could not say who placed the cash into his hands. He said he does not receive pay stubs from the job he has. Mr. Nelson said $40,000.00 of the seized currency was from his grandmother's cashed bonds;

4

the rest was from "other places". Trooper Pelster asked Mr. Nelson again if his father had cashed the bonds. Mr. Nelson hesitated, then said he wanted to leave his dad out of this. Trooper Pelster asked Mr. Nelson if he could state the name of the bank where the bonds had cashed. He could not; Mr. Nelson said he did not even have a bank. Trooper Pelster terminated the interview at approximately 12:46 pm.

8. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

        UNITED STATES OF AMERICA,
        Plaintiff

        DEBORAH R. GILG
        United States Attorney

By: _____
     NANCY A. SVOBODA (#17429)
     Assistant U.S. Attorney
     1620 Dodge Street, Suite 1400
     Omaha, Nebraska 68102-1506
     (402) 661-3700

VERIFICATION

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )

Pursuant to Rule C(2), Supplemental Rules for Certain Admiralty or Maritime and Asset Forfeiture Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 23rd day of March, 2010.

GENERAL NOTARY - State of Nebraska
SHARLEEN ANN MAXWELL
My Comm. Exp. June 6, 2013

Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney

7